### UNITED STATES of America,

### v.

### Bess MYERSON, Carl A. Capasso, a/k/a "Andy Capasso," and Hortense Gabel, Defendants.

### No. 87 Cr. 796 (JFK).

United States District Court, S.D. New York.

July 6, 1988.

Rudolph W. Giuliani, U.S. Atty. for the S.D. New York, New York City (David N. Lawrence, Stuart Abrams, Asst. U.S. Attys., of counsel), for U.S.

Goldman & Hafetz, New York City (Frederick P. Hafetz, Jeremy Gutman, of counsel), for defendant Bess Myerson.

Jay Goldberg, New York City (Judd Burstein, New York City, of counsel), for defendant Carl A. Capasso.

---

Shea & Gould, New York City (Michael S. Feldberg, Steven N. Gersten, of counsel), for defendant Hortense Gabel.

## OPINION AND ORDER

KEENAN, District Judge:

### Background

Defendant Hortense Gabel ("Gabel") is charged jointly with her two co-defendants in five counts of a six-count indictment. Defendant Bess Myerson is alone charged in the sixth count. The charges and basic thrust of the indictment are set forth in earlier decisions of this Court dated April 13, 1988 and June 21, 1988, familiarity with which is assumed. Now before the Court is a motion by Gabel to suppress, and have returned to her, certain documents. The motion is granted in part and denied in part.

On August 6, 1987, while the grand jury was investigating this matter and before the indictment was returned, Gabel's daughter, Sukhreet, appeared at the United States Attorney's Office with several shopping bags of documents from Gabel's files which had originally been in Gabel's Chambers while she was a New York State Supreme Court Justice. The Court is convinced that no Government attorney or agent in any way directed or suggested to Sukhreet Gabel ("Sukhreet") that the documents be brought to the United States Attorney's Office and that Sukhreet was acting entirely on her own when she brought these shopping bags to the United States Attorney's Office.

When this motion was first filed, only ten documents were at issue which the Government initially declined to identify to the defense. At the Court's suggestion on May 25, 1988, the Government supplied to the defense copies of each of the ten documents. Subsequently on May 26, 1988, the Government supplied the defense with a copy of another document, the telephone bill of a third party, which had also been supplied by Sukhreet on August 6, 1987. It should be noted that all of these eleven documents had already been supplied to the defense in the discovery process by the

Government, but it was not until the two late May, 1988 dates that the Government identified them as from the shopping bags.

On June 8, 1988, the Government produced a Supplemental Affidavit of Special Investigator Anthony J. Lombardi which attached as exhibits additional documents which Sukhreet had supplied to the Government. The documents were supplied on August 6, 1987 with the shopping bag documents, on August 10, 1987, or on October 20, 1987. On April 13, 1988, after this motion was filed, Sukhreet also produced her mother's "Rolodex" file from defendant Gabel's Chambers.

The "new" August 6, 1987 material referred to in the June 8, 1988 Supplemental Affidavit consisted of four pages of directions for driving to the summer residence of third parties in Eastern Long Island. This material had already been supplied to the defense in discovery. Apparently, Sukhreet originally told the Government that the directions had been given to her in August, 1983 (Lombardi Supplemental Affidavit ¶ 4) and thus the Government did not originally include it in the initial response to the motion to suppress since it would not have been from Gabel's Chambers. However, further interviews with Sukhreet during the week of May 30, 1988 disclosed that although she had originally gotten the directions in August, 1983 "she had given this document back to her parents." Lombardi Supplemental Affidavit ¶ 5. Sukhreet also stated that she had gotten the directions from her mother's records prior to producing them for the prosecution on August 6, 1987.

The item produced by Sukhreet on August 10, 1987 consisted of a single "Rolodex" card with the defendant Myerson's name, official title and office telephone numbers. Defendant Gabel's "Rolodex" files had previously been subpoenaed by the grand jury and produced on July 27, 1987. Those " 'Rolodex' files contain an entry for 'Bess Myerson' that is virtually identical to the card produced by Sukhreet," (Lombardi Supplemental Affidavit ¶ 7), and they were made available to the

defense as part of discovery on January 29, 1988.

The documents provided by Sukhreet on October 20, 1987 to the Government consisted of her father's financial and tax papers. Apparently, these documents have not been copied, studied or analyzed by the Government and are being kept locked and secure separate from other documents.

To insure complete accuracy by the Court, the entirety of paragraph 9 of the June 8, 1988 Supplemental Affidavit of Investigator Lombardi is set forth below:

9. On April 13, 1988, Sukhreet Gabel produced a "Rolodex" file that she stated was the "Rolodex" file maintained by defendant Gabel in her Supreme Court Chambers. Duplicate copies of a limited number of these documents were made by me (Exhibit 4). After I advised Assistant United States Attorney Lawrence about Ms. Gabel's production, Assistant United States Attorney Lawrence advised me not to make any further duplications and to segregate these duplicated documents. I also was advised by him to return the "Rolodex" file to Ms. Gabel. This was done. The duplicated documents have remained segregated and, until the preparation of this affidavit, have not been reviewed by anyone else except your affiant. The documents have not been relied upon by me in any aspect this case.

The original Government response to this motion was filed on May 3, 1988. Included with the response was an initial affidavit of Special Investigator Lombardi dated May 2, 1988. This affidavit, together with a sworn Question and Answer Statement ("Q & A") of Sukhreet Gabel taken August 6, 1987 sets forth the method by which the shopping bag documents at issue came into the Government's possession. Portions of Sukhreet's "Q & A" relevant to this motion are hereby ordered unsealed and are affixed to this Opinion as Exhibit "A". The remainder of the "Q & A" is 3500 material which the Government will produce to the defense at trial and is to remain under seal until then.

The history of the "shopping bag" documents can best be summarized as follows. During the last week of July or the first week of August, 1987, defendant Gabel brought to her home from her Chambers portions of her "personal files." Sukhreet, with her parents' permission, selected the 1983 files that "pertained to Bess Myerson" and what she thought was relevant correspondence for the years 1982, 1983 and 1984. Although Sukhreet obtained possession of the files with the knowledge and consent of her parents, her parents did not know she would bring the papers to the United States Attorney's Office, which she did without any suggestion or direction from Government authorities. Sukhreet had not had an opportunity to carefully review the documents she brought in the shopping bags to the United States Attorney and she was later given an opportunity to do so alone, without any Government agent present at the United States Attorney's Office. Sukhreet was given the option of supplying any documents she wished to the Government or of not supplying any at all. The prosecutor clearly informed Ms. Gabel that she was under no compulsion or obligation to provide any of the documents to the Government even though she had already brought them to the prosecutor's office. Sukhreet acknowledged that she understood she was under no compulsion. According to the January 21, 1988 affidavit of Sukhreet Gabel filed by the defense in support of this motion at ¶ 5, Sukhreet told her mother that she "might want to show some of the papers to 'the attorneys'." Although Sukhreet meant the prosecution attorneys, she did not specify to her mother which attorneys she was referring to.

*Discussion*

There is no showing whatsoever by the Government that financial or tax papers relating to Milton Gabel have the remotest relationship to the charges in this case. Accordingly, those documents which were supplied on October 20, 1987 are to be returned to counsel for defendant Gabel forthwith. The Government is directed not to copy, read, scan or review the Milton

Gabel papers and to supply them to defense counsel so that they may be returned to the defendant's husband in their present state. This portion of the motion is granted.

By grand jury subpoena, the "Rolodex" documents supplied on April 13, 1988 were already in the possession of the Government on July 27, 1987 as was the Bess Myerson "Rolodex" card supplied on August 10, 1987. Lombardi Supplemental Affidavit ¶ 7. There is no reason to suppress copies of documents which the Government already had legal possession of. This portion of the motion is denied.

Remaining at issue are the ten original "shopping bag" documents, the third party telephone bill and four pages of directions to the summer residence in Eastern Long Island. The Court does not believe that defendant Gabel's fourth amendment rights have been infringed in connection with any of these documents and these portions of the defense motion are denied.

■■■ The fourth amendment applies to governmental searches and seizures only; not to those conducted by private citizens who are not Government agents. This has been the law for over 65 years. *Burdeau v. McDowell,* 256 U.S. 465, 471, 41 S.Ct. 574, 574, 65 L.Ed. 1048 (1921). It remains the law. *United States v. Jacobsen,* 466 U.S. 109, 114, 104 S.Ct. 1652, 1656, 80 L.Ed. 2d 85 (1984); *Coolidge v. New Hampshire,* 403 U.S. 443, 488–89, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 654 (1971). This doctrine has been recognized in the Second Circuit. *See United States v. Bonfiglio,* 713 F.2d 932, 939 (2d Cir.1983); *United States v. Bennett,* 709 F.2d 803, 805 (2d Cir.1983), *after remand,* 729 F.2d 923 (2d Cir.), *cert. denied,* 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984). The Court believes that *Coolidge* and *Jacobson* are particularly persuasive here and carry the day for the Government. The private review of the documents by Sukhreet Gabel on August 6, 1987 was not a separate search. She had already gone over the documents in her parents' home with a view towards the year 1983 before bringing them to the prosecutor's office. The field test conducted in *Jacobsen* is not analogous to what occurred at the United States Attorney's Office on August 6, 1987. *See Jacobsen,* 466 U.S. at 121–22, 104 S.Ct. 1660–61. Moreover, as stated above, there is no evidence which would indicate that Sukhreet was acting as an agent or instrument of the Government. *See id.* at 114–15, 104 S.Ct. 1656–57.

The somewhat confusing history of the four pages of directions referred to above does not change the result of this part of the motion.

To the extent set forth above, the motion is granted as to Milton Gabel's financial and tax papers. The motion in all other respects is denied.

SO ORDERED.

## EXHIBIT A

I've also brought a number of files which I procured from the home of my parents, Dr. and Mrs. Gable.

S. Gabel 8–6–87

These files came from my mother, Judge Gabel's office, and she brought them to her home during the last week.

These were the personal—these are a selection of the personal files which her secretary, Brenda Shrobe, S-h-r-o-b-e, selected as files which she might want to go through and either copy of throw away.

I asked my parents' permission to select the ones that specifically pertained to Bess Myerson or to my mother's or father's relationship with Bess Myerson, and in the presence of my father, sorted through the boxes containing these files and pulled out those which I thought were potentially relevant, including correspondence of the years 1982, '83 and '84, and other types of documents which I—which are of similar nature.

Q  Ms. Gabel, have you had an opportunity to examine the individual documents?

A  No, I have not at this time.

Q  Do you have these documents in your possession with the full knowledge and consent of your parents?

A  Yes, I do.

Q  But your parents do not realized that it was your intention to bring them down to the U.S. Attorney's Office?

A  No, they do not.

Q  Did you obtain these documents—I want you to listen very closely—did you obtain these documents either at any suggestion, through any implication, direct, subtle, or otherwise, by any—made by any member of the Government?

A  No.

Q  Including not only myself but—or any other attorneys associated with the Government, agents as well?

A  None.  I have had no contact and no discussion regarding these documents or any others with any staff person or attorneys associated with the United States Government.

Q  It is your position, then, that your decision to bring the documents down here to the Government is one which you are making voluntarily and it is solely and exclusively your decision and your idea to do this?

A  Completely my decision.

Q  And nobody has even suggested to you that you should embark upon such a course?

A  Absolutely not.  This is my own idea, and I originated it.  I physically brought these documents to this office to look at and to share, potentially, with the U.S. Attorney.

Q  Once again, your parents fully know and have consented to your possession of these documents?

A  Yes.  My mother has given verbal permission for me to look either in her presence, in my father's presence or alone at any documents I may choose to look at.

This morning in selecting these documents, I was in the presence of my father, who was aware of which documents were being removed, which documents and files were being scrutinized, and was aware that I was taking them away and may potentially Xerox whatever documents I found relevant.

Q  And, you realize, and I want to confirm this for the record today, which is something which has been told to you before by the Government, that in coming down here to speak and answer questions and to produce documents, it is with the full understanding by you that your mother is, among other individuals, a subject and, indeed, a target of a criminal investigation?

A  I fully understand that, Mr. Lawrence.

And, may I add for the record, that I believe that the same law applies to every single individual who is a member of this society and that, therefore, I consider myself and my relatives as responsible as anyone else to that law.

Q  And your motives in bringing these documents down to the U.S. Attorney's Office?

A  My sole motive is to establish what the truth is, the full and objective truth.

Q  And it is your belief that these documents might shed some light on the truth of what occurred surrounding your hiring and any possible agreement that may have been struck between Miss Myerson and your mother?

A  I believe they may shed either direct or indirect light on this subject.

Q  Is it also your position that you have access and/or possession to additional documents which you have not brought down today?

A  Yes.  There are more documents which I have not yet scrutinized or selected.

Q  It is once again your position that should you decide to produce these additional documents, that they will be—that it is solely your idea and you're doing it wholly voluntarily, without either suggestion or implication by the Government, that this is a course of action that you should embark on?

A  Absolutely.

Q  And no threats or promises or acts of coercion have been made in any respect to induce you to bring these documents down?

A In no way.

Q At this time, Ms. Gabel, let me just state on the record, since you have not had an opportunity to look through these documents, we are going to set you up in a separate room, permit you to look through the documents, and should there be any specific documents that you wish to provide to the Government, we will have an agent look at them.

Should there be any documents that you do not wish to provide to the Government, for whatever reason, we in no way will compel you or ask you to produce them.

Do you understand that?

A Yes, I do. Thank you.